## STOVALL *v.* BANKS.

1. A decree which adjudges a certain sum of money to be due from an administrator to each of the distributees of his intestate's estate, and awards execution to collect it, is a final decree. An added direction that the defendant be allowed, as payment to each of the distributees, the amount of any note held by him against them, and also that the several shares of the parties to whom the estate is awarded, shall be subject to ratable deduction for fees yet unpaid for the collection of notes belonging to the administrator, does not make the decree less final; especially when it does not appear that the administrator held any notes against any of the distributees, or that there were any unpaid fees.
2. Sureties in an administration bond are bound by a decree against their administrator finding assets in his hands, and nonpayment of them over, to the same extent to which the administrator himself is bound. They cannot attack collaterally a decree made against him on such a subject.
3. A decree of a court of competent jurisdiction awarding a sum in the hands of an administrator to distributees, cannot be attacked collaterally.

ERROR to the District Court for the Northern District of Georgia.

This was an action of covenant upon an administration bond, brought by the ordinary of Morgan County, Georgia, for the use of persons claiming to be distributees of the estate of Alfred Eubanks, deceased, against the administrator, who was the principal obligor, and against his sureties in the bond. At the trial the plaintiff offered in evidence the record of a suit in chancery in the Morgan County Superior Court, in which the persons for whose use this suit was brought were complainants, and the administrator, with others who also claimed to be heirs and distributees of the estate of the decedent, were defendants. By that record it appeared that the Superior Court adjudged the sum of $31,-743.50, assets of the decedent's estate, to be in the hands of the administrator, and made an order distributing the whole. In the distribution $3820 were decreed to be paid to each of the complainants in the bill, and it was ordered that they should have executions for the respective sums adjudged to them on application to the clerk of the court after four days from its adjournment. The record further exhibited that executions were issued upon the decree, that no objection was made to the issue, and that to all of the executions the sheriff returned, "No property of the defendant or of the estate of Alfred Eubanks to be found upon which to levy."

In addition to this, however, the record showed that the court, after having fixed the sum due to each complainant, and ordered its payment, and after having awarded execution, went on to direct that the administrator should be allowed as payment to the respective parties, to be deducted from the amounts therein adjudged to them, the principal and interest of any note held by him against either of them; and also *that the several shares of the parties to whom the estate was awarded should be subjected to ratable deduction for fees yet unpaid for the collection of notes belonging to the administrator.*

When this record was offered in evidence the District Court rejected it, holding that the decree was not final, and consequently that it could not be read in evidence for any

purpose in the case.   This action of the court was now here for review.

*Mr. J. D. Pope, for the plaintiff in error :*

The last sentence in the decree was the ground doubtless for the rejection.   But it was insufficient.   It does not appear that any portion of the litigation was held back for *future* adjudication.   A decree in which nothing is so held back must be final.   The right reserved in the present case is no more than a right reserved to pay in any specific piece of property or in a designated kind of currency.   A decree is not less final in its nature because some future *orders* of the court may possibly become necessary to carry it into effect.*

*Mr. D. T. Walker, contra :*

1. The record of the suit in the Morgan County court, offered in evidence and rejected by the court below, was so incomplete that it would not support an action.   Matters were left open by it, and until these were adjusted the decree had nothing specific and final in it.   The case of *Sadler* v. *Robins,* 1 Campbell's Nisi Prius,† seems exactly in point. The attention of this court is directed to it.

2. If admitted, the decree would have such effect only as it had in the State court, and in that court it was only *primâ facie* evidence as to the surety.   Judgments bind none but parties and privies, and there is no such privity between principal and surety.‡   If it had been admitted, and that effect had been given to it, the result in this case would have been the same.

3. Finally, the court of Morgan County and the Supreme Court of the State, we may add, on appeal, fell into the fatal error of holding the marriage, in virtue of which the distributees in this case claimed, to have been voidable instead of void.

[The counsel then went into an argument upon evidence .

---

* Thompson *v.* Dean, 7 Wallace, 342; Railroad Company *v.* Bradley, Ib. 575.

† Page 253.                    ‡ Bryant *v.* Owen, 1 Kelley, 369-371.

taken on commissions from the court of Morgan County and found in the transcript, to show that the distributees, for whose use the suit below was brought, claimed in virtue of a marriage which had no legal existence.]

*Mr. Pope, in reply,* went largely into this same evidence, to show that the conclusions of the opposing counsel could not on the evidence be sustained.

Mr. Justice STRONG delivered the opinion of the court.

The court below rejected the record of the suit in chancery in Morgan County Superior Court, holding that the decree was not final, and consequently could not be given in evidence for any purpose in the case. In this we think there was error. It cannot be maintained that a decree which adjudges a certain sum of money to be due from a defendant to the complainant, and awards execution to collect it, is not a final decree conclusive upon the parties. We do not overlook the fact that in this instance the court, after having determined the sum due to each of the complainants and directed its payment, and after having awarded execution, went on to direct that the administrator be allowed as payment to the respective parties, to be deducted from the amounts therein adjudged to them, the principal and interest of any note held by him against either of them. It also directed that the several shares of the parties to whom the estate was awarded should be subjected to ratable deduction for fees yet unpaid for the collection of notes belonging to the administrator. But we think the decree was not, for this reason, the less final.

Even if the sum decreed was left indeterminate, it was certainly adjudicated that the complainants were entitled to participate in the distribution, and the extent of their interest was defined. But it does not appear that there were any unpaid fees, or that the administrator held any notes against either of the distributees. All that these parts of the decree meant, therefore, was either direction to the sheriff respecting the execution of the *fi. fas.*, or liberty to the defendant

to move for a modification of the decree,—a motion never made. Plainly they were not intended to prevent the enforcement of the decree by executions against the administrator, for such executions were expressly allowed. It is not unusual in courts of equity to enter decrees determining the rights of parties, and the extent of the liability of one party to the other, giving at the same time a right to apply to the court for modifications and directions. It has never been doubted that such decrees are final. They are all that is necessary to give to the successful party the full benefit of the judgment. In Daniell's Chancery Practice,\* the effect of allowing the privilege of making such applications to the chancellor, is stated to be no alteration of the final nature of the decree. Says the author, "A decree with such a liberty reserved is still a final decree, and, when signed and enrolled, may be pleaded in bar to another suit for the same matter." So in *Mills* v. *Hoag*,† it was said that "a decree is not the less final in its nature, because some future orders of the court may possibly become necessary to carry such final decree into effect." In the case before us no future orders were necessary. The decree was ripe for execution, and execution was ordered.

We are referred, however, to the nisi prius case of *Sadler* v. *Robins*, 1 Campbell's Nisi Prius Reports.‡ Without dwelling upon the fact that those Reports have not always been considered safe authority, an examination of the case, as reported, will reveal that it does not sustain the ruling of the District Court. It was an action of assumpsit on a decree of the High Court of Chancery in Jamaica. The decree was for a certain sum, current money of the island, "first deducting thereout the full costs of the defendants expended in the said suit, the same to be taxed by George Howell, Esquire, one of the masters of the said court, and also deducting all and every further payment or payments which the said James Sadler and R. Haywood, or either of them, might, on or before the first day of January, 1806, show to the sat-

---

\* Vol. 2, pp. 641, 642.          † 7 Paige, 19.          ‡ Page 253.

isfaction of the said George Howell that they or either of them had paid on account of their said testator's estate." This decree Lord Ellenborough held to be incomplete, and ruled that assumpsit would not lie upon it. But it must be observed that there were certainly unascertained deductions to be made. Costs had been expended by the defendants, and the plaintiff might have had them taxed, even if the defendants had not appeared to tax them. It was for this reason the decree was adjudged not complete. There was not, as in the present case, an award of execution to enforce the decree, and there could not have been, for there was a reference to a master to ascertain definitely its amount.

It has been argued on behalf of the defendants in error that the decree of the Superior Court, if admitted, would have been only *primâ facie* evidence against the sureties in the bond. Were that conceded it would not justify the exclusion of the evidence. But the concession cannot be made. The decree settled that the administrator of the intestate, Alfred Eubanks, held in his hands sums of money belonging to the equitable plaintiffs in this suit, as distributees of the intestate's estate, which he had been ordered to pay over by a court of competent jurisdiction, and the record established his failure to obey the order. Thereby a breach of his administration bond was conclusively shown. Certainly the administrator was concluded. And the sureties in the bond are bound to the full extent to which their principal is bound. A principal in a bond may be liable beyond the stipulations of the instrument, independently of them, but so far as his liability is in consequence of the bond, and by force of its terms, his surety is bound with him. There may be special defences for a surety arising out of circumstances not existing in this case, but in their absence, whatever concludes his principal as an obligor concludes him. He cannot attack collaterally a decree made against an administrator for whose fidelity to his trust he has bound himself.

Much of the argument upon both sides of this case has been devoted to the consideration of the inquiry whether the Su-

perior Court of Morgan County and the Supreme Court of Georgia rightly adjudged that the equitable plaintiffs are entitled to a share of the estate of the decedent in the administrator's intestate. That is no longer an open question. It was concluded by the decree offered in evidence. It cannot be tried again in this case.

JUDGMENT REVERSED, AND A NEW TRIAL ORDERED.