944 P.2d 517

R.E. MONKS CONSTRUCTION COM-
PANY, a Colorado corporation,
Plaintiff–Appellant,

v.

AETNA CASUALTY &. SURETY COM-
PANY, a foreign corporation, De-
fendant–Appellee.

No. 1CA–CV96–0477.

Court of Appeals of Arizona,
Division 1, Department E.

Aug. 26, 1997.

Guy Wm. Bluff, P.C. by Guy Wm. Bluff
and Bruce A. Smidt, Phoenix, for Plaintiff–
Appellant.

Jones, Skelton & Hochuli by Eileen J.
Dennis and James J. Osborne, Phoenix, for
Defendant–Appellee.

VOSS, Judge.

Appellant R.E. Monks Construction Company (Monks) appeals from the trial court's entry of judgment in favor of Appellee Aetna Casualty & Surety Company (Aetna) on the ground that Monks did not timely file suit on the statutory payment bond Aetna issued as surety for JWJ Contracting Company (JWJ). We affirm.

## FACTS AND PROCEDURAL HISTORY

The parties stipulated to the following facts. On October 23, 1991, JWJ entered into a prime contract with the Arizona Department of Transportation (ADOT) for a road construction project on State Route 87. Because this was a public construction project, JWJ was required to obtain a payment bond. Arizona Revised Statutes Annotated section (A.R.S. § ) 34–222. Aetna issued the statutory payment bond with JWJ as principal and Aetna as surety.

On October 31, 1991, JWJ and Monks entered into a subcontract agreement for work on the project. Monks moved its equipment onto the project site in November of 1991, and began work in January of 1992. The project was deemed substantially complete after May 1993, but was never finally accepted by ADOT's engineer. After May 1993, JWJ removed its field office trailer from the project site and JWJ, ADOT, and Monks met at off-site locations. The last date Monks was physically on the project site was July 31, 1993. As late as February 9, 1994, however, Monks engaged in project close-out, project administration, and final negotiations regarding the extra work it performed prior to July 31, 1993.

JWJ failed to pay several of Monks's invoices and filed for federal bankruptcy protection on July 1, 1994. Monks filed suit on the payment bond on August 3, 1994. The matter went to mandatory arbitration and the arbitrator found for Monks. Aetna appealed the arbitrator's decision. The parties filed cross-motions for summary judgment, which the trial judge denied. The parties then submitted the case to the trial judge on stipulated statements of fact. The trial judge found that Monks's complaint was un-timely filed, and entered judgment in favor of Aetna. Monks timely appealed.

## DISCUSSION

■ Because the parties have stipulated to the facts, the only issue before this court is the interpretation of the limitations statute contained in A.R.S. § 34–223(B). Statutory interpretation is an issue of law that we review *de novo*. *Wareing v. Falk*, 182 Ariz. 495, 497, 897 P.2d 1381, 1383 (App.1995).

This suit was brought pursuant to the provisions of Arizona's "Little Miller Act," which governs bonding for public construction projects. A.R.S. §§ 34–221 to 34–226. This act imposes the following time limitation for suits on the general contractor's payment bond:

> Every suit instituted under this section shall be brought in the name of the claimant, but no such suit shall be commenced after the expiration of one year from the date on which the last of the labor was performed or materials were supplied by the person bringing this suit.

A.R.S. § 34–223(B). It is uncontested that the last date Monks's employees were physically on the construction site and, therefore, the last possible date Monks did any actual road construction, was July 31, 1993. At issue is whether other administrative tasks performed after that date constitute "labor" under the statute. Specifically, Monks argues that Aetna's stipulations that within one year of Monks's filing suit Monks engaged in project closeout, project administration, and final negotiations regarding extra work, and that these tasks were in direct completion of the prime contract between JWJ and ADOT and were not performed to correct defects or make repairs, require a finding that Monks's suit was timely filed. Aetna responds that Monks's stipulation that none of these tasks involved physical labor at the project site requires this court to uphold the trial court's determination that Monks's suit was untimely.

■ We recognize that the Little Miller Act is a remedial statute that must be liberally construed to protect subcontractors providing labor and materials for a public construction project. *Western Asbestos Co.*

v. *TGK Constr. Co., Inc.*, 121 Ariz. 388, 391, 590 P.2d 927, 930 (1979); *Coast to Coast Mfg. v. Carnes Constr., Inc.*, 145 Ariz. 112, 113, 700 P.2d 499, 500 (App.1985). Such a construction must not, however, simply disregard limitations the legislature imposed, but give effect to the purpose of the limitations. *Coast*, 145 Ariz. at 113, 700 P.2d at 500.

This court has previously held that the limitations period under A.R.S. § 34–223 does not begin to run until completion of all work performed in direct furtherance of the construction contract. *Honeywell, Inc. v. Arnold Constr. Co., Inc.*, 134 Ariz. 153, 156–57, 654 P.2d 301, 304–05 (App.1982). In *Honeywell*, we distinguished work performed in direct completion of the contract, which extends the limitations period, from remedial, repair, and warranty work, which does not extend the limitations period. *Id.* at 156–58, 654 P.2d at 304–06. *Accord, United States ex rel. Austin v. Western Elec. Co.*, 337 F.2d 568, 572–73 (9th Cir.1964). Under the test as stated in *Honeywell*, the parties' stipulations appear to require a finding that Monks timely filed suit because the parties agreed that within one year of filing suit Monks did work in direct completion of the contract and this work did not constitute remedial or repair work. At issue in *Honeywell*, however, was physical labor performed either at the job site or on materials incorporated into the building under construction. *Honeywell*, 134 Ariz. at 157, 654 P.2d at 305. We did not address whether the limitations period begins to run from the subcontractor's completion of physical labor at the job site, or whether administrative work required by the contract is also considered "labor" for purposes of extending the limitations period under the statute. We resolve that issue in this case.

We have found no case law in Arizona directly on point. We, therefore, look to cases interpreting the federal Miller Act on which the Arizona statute is based. *Honeywell*, 134 Ariz. at 156, 654 P.2d at 304; *Gen. Acrylics v. U.S. Fidelity & Guar.*, 128 Ariz. 50, 52–54, 623 P.2d 839, 841–43 (App.1980). Based on federal law, we hold that "labor" refers to physical labor or construction work, not to administrative work.

It appears that the Fifth Circuit would reject a claim that off-site administrative tasks extend the limitations period. In a footnote to a decision construing the term "labor" in the Miller Act, the court noted that certain administrative tasks, such as obtaining lien releases or waivers, paying taxes, and defending claims, would not extend the limitations period. *Gen. Ins. Co. of America v. United States ex rel. Audley Moore & Son*, 406 F.2d 442, *opinion on denial of rehearing*, 409 F.2d 1326, 1327 n. 1 (5th Cir.1969). The court found that the limitations period began to run on the last date of on-site construction activity. *Id.* at 443, *opinion on denial of rehearing*, 409 F.2d at 1327.[1] In addition, the Eighth Circuit has held that the Miller Act applies only to on-site supervisory work involving physical labor and indicated that the term "labor" applies only to on-site physical labor and not to general administrative tasks. *United States ex rel. Olson v. W.H. Cates Constr. Co., Inc.*, 972 F.2d 987, 990–91 (8th Cir.1992). *But cf. Johnson Serv. Co. v. Transamerica Ins. Co.*, 485 F.2d 164, 174 (5th Cir.1973) (under Texas law, "labor" is broadly construed).

The legislative history of the Miller Act further supports the interpretation that the time limit for suit on the payment bond

---

1. In *Honeywell*, we adopted the Fifth Circuit's distinction between essential and remedial work, and specifically approved the Fifth Circuit's language stating that not all work done in completion of the contract constitutes "labor" under the limitations statute. *Honeywell*, 134 Ariz. at 156, 654 P.2d at 304, *citing General Ins.*, 406 F.2d at 442, 409 F.2d at 1327. This approval, however, does not indicate our adoption of a "substantial completion" approach to tolling the limitations period, which arguably the Fifth Circuit follows in Miller Act cases. *United States ex rel. T.L. Wallace Constr. Inc. v. Fireman's Fund Ins. Co.*,

790 F.Supp. 680, 683–84 (S.D.Miss.1992); *see also United States ex rel. Luis A. Cabrera, S.E. v. Sun Eng'g Enter., Inc.*, 817 F.Supp. 1009, 1014 (D.P.R.1993)(discussing federal court approaches to interpreting the limitations statute). In fact, we rejected that approach in *Honeywell*, 134 Ariz. at 156, 654 P.2d at 304. Because it is unclear whether the Fifth Circuit's rejection of administrative tasks as tolling the limitations period was based on the determination such tasks were insubstantial, we hesitate to simply adopt the Fifth Circuit's approach.

begins to run from a subcontractor's completion of construction activity. Prior to a 1959 amendment, the federal act provided that a suit on the payment bond must be brought within one year of "final settlement" of the contract. 40 U.S.C. § 270b(b) (1958); *see Gen. Insurance,* 406 F.2d at 444 n. 4. This statute was amended to change the time for bringing suit to within one year from the "day on which the last of the labor was performed or material was supplied." Act of Aug. 4, 1959, Pub.L. No. 86–135, 73 stat. 279 (codified as amended 40 U.S.C. § 270b(b)). One of the purposes of the 1959 amendment was to "set a specific, easily ascertainable date" from which to calculate the limitations period. *Gen. Ins.,* 406 F.2d at 444; *see also Travis Equip. Co. v. D & L Constr. Co. & Assoc.,* 224 F.Supp. 410 (W.D.Mo.1963) (discussing 1959 amendment). The Arizona legislature adopted the language of the 1959 amendment when it adopted the Little Miller Act. *See* William Haug, *Arizona's Little Miller Act,* 5 Ariz. Bar J. No. 2 at 13–16 (Sept. 1969).

Although federal cases interpreting the 1959 amendment show this purpose has not been entirely realized, limiting "labor" to construction work done in furtherance of the contract provides a much more easily ascertainable date than the less defined administrative tasks of "final reconciliation of force accounts, Project close-out, administration and negotiation of final amounts owed" claimed to extend the accrual date of the limitations period in this case. To further the legislative purpose of having a specific, easily ascertainable date on which a suit on a Little Miller Act payment bond accrues, we hold that the term "labor" in A.R.S. § 34-223(B) means physical labor and construction work done in furtherance of the contract, not administrative tasks.

■ Moreover, Monks's work was neither on-site nor off-site work of the nature to be incorporated on-site that we have contemplated to extend the accrual date. Although not turning on the on-site/off-site distinction, this court in *Honeywell* recognized that construction work need not necessarily occur on-

site to toll the limitations period. 134 Ariz. at 157, 654 P.2d at 305. However, such off-site work must be performed in furtherance of the original contract, be non-remedial, and be incorporated at the on-site construction project. Monks's administrative tasks do not fall within this type of off-site work, and thus, do not extend the accrual date.

■ Monks raises several additional issues for the first time on appeal. We agree with Aetna that Monks has waived these issues by failing to raise them in the trial court. *Premier Fin. Servs. v. Citibank,* 185 Ariz. 80, 86, 912 P.2d 1309, 1315 (App.1995); *Campbell v. Warren,* 151 Ariz. 207, 208, 726 P.2d 623, 624 (App.1986). We exercise our discretion, however, to address Monks's argument that the limitations period cannot begin to run until JWJ defaulted in its payment to Monks.[2] *Jimenez v. Sears, Roebuck and Co.,* 183 Ariz. 399, 406–07 n. 9, 904 P.2d 861, 868–69 n. 9 (1995).

■ Monks argues that a surety's obligation to pay does not arise until the principal defaults, and, therefore, any suit against the surety before the principal defaults is premature. We agree that generally a suit under a surety bond does not arise until the principal breaches the underlying contract. *E.L. Farmer Constr. v. Hartford Accident & Indem. Co.,* 114 Ariz. 210, 211, 560 P.2d 65, 66 (App.1977); *C.M. Eichenlaub Co., Inc. v. Fidelity & Deposit Co.,* 293 Pa.Super. 11, 437 A.2d 965, 966–67 (1981). This rule does not apply, however, to suits on a payment bond under the Little Miller Act, where the surety bond provides an additional remedy for unpaid subcontractors on public projects similar to a mechanic's lien available as a remedy on private contracts. *Trio Forest Prods., Inc. v. FNF Constr., Inc.,* 182 Ariz. 1, 2, 893 P.2d 1, 2 (App.1994). On public projects, where no lien rights are available against public property, the payment bond provides a substitute for lien rights against the improved property and the surety is not simply a substitute for the defaulting principal. *Id.; Gen. Acrylics,* 128 Ariz. at 54, 623 P.2d at 843. An unpaid subcontractor has a separate cause of action

---

**2.** It is uncontested that JWJ did not default on payments owed to Monks until some time less than one year before Monks filed suit against Aetna.

as a general creditor of the defaulting principal. *Gen. Acrylics,* 128 Ariz. at 56, 623 P.2d at 845.

■ To recover against the payment bond, a claimant must comply with statutory procedures. *See Travis Equip. Co. v. D & L Constr. Co. & Assoc.,* 224 F.Supp. 410, 415 (W.D.Mo.1963)(must comply with statutory limitations to recover on bond); *Brown Wholesale Elec. v. Merchants Mut. Bonding Co.,* 148 Ariz. 90, 95, 713 P.2d 291, 296 (App.1984)(liabilities of surety on statutory bond measured by statute); *Gen. Acrylics,* 128 Ariz. at 55, 623 P.2d at 844 (untimely claimants on payment bond are general creditors of the contractor). The applicable statute provides that a claimant who has not been paid in full "before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by the claimant or material was furnished or supplied by the claimant" has a right to sue on the payment bond for the unpaid balance. A.R.S. § 34–223(A). There is no statutory requirement that the principal be in default, only that the claimant has not been paid within ninety days after performing the labor or supplying the material.

## CONCLUSION

A claimant under a payment bond for a public construction project is required to file suit within one year of the last date the claimant performed labor or construction work in furtherance of the public construction project. Further, we hold today that administrative tasks do not constitute either "labor" pursuant to A.R.S. § 34–223(B) nor off-site work in furtherance of the original contract.

Because Monks had not performed physical labor for over one year and because administrative tasks are not the type of off-site work that toll the accrual date, the trial court correctly dismissed the action as untimely. Accordingly, we affirm.

WEISBERG, P.J., and KLEINSCHMIDT, J., concur.